## Otis Slater, Appellee, v. W. H. Pomeroy, Appellant.

1. VERDICT—*when not disturbed as against the evidence.* A verdict will not be set aside on review as against the weight of the evidence unless clearly and manifestly so.

Action commenced before justice of the peace. Appeal from the City Court of E. St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding. Heard in this court at the August term, 1907. Affirmed. Opinion filed March 18, 1908.

ALEXANDER FLANNIGEN, for appellant.

DAN McGLYNN, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

In the month of August, 1905, one Sherwin shipped thirty head of horses from Colorado to the National Stock Yards in St. Clair county, Illinois, consigned to appellant, who was engaged in the live stock commission business at that place, for sale on commission. After the arrival of the horses at the stock yards appellant showed them to appellee, a horse buyer, pricing them at $25 a head. Appellee refused to pay this price and later purchased of Sherwin, the owner, at $22.50 a head. Almost immediately after appellee bought the horses, they were sold at public auction by an agent of Campbell & Reed Sales Stables Co. Such a sale of horses at public auction is called "putting them through the ring." The customary commission for putting horses through the ring at that place was $2 a head. The Sales Stable Co. collected the money for which the horses were sold, some $900, from the purchaser, and accounted for the same, less one-half of the commission, to appellant. Appellant afterwards settled with Sherwin, paying him $22.50 a head for the horses less a commission of $2 a head. After settling with Sherwin there remained in appellant's hands from the proceeds of the same the sum

of $225. When appellee came for a settlement of the amount due him appellant gave him a check for $165, claiming the right to charge appellee a commission of $2 a head or $60 for selling the horses in the auction ring. Appellee objected to the payment of the commission, insisting that by the terms of his purchase, he was not to pay anything for putting the horses through the ring. There was some controversy over this matter which resulted in appellee's taking the check and going away. Some two weeks later, appellee again called on appellant and demanded the balance claimed by him to be yet due, amounting to $60, and payment being refused by appellant, appellee brought this suit. There was a trial by jury, resulting in a judgment and verdict in favor of appellee for $60.

It is claimed by appellee that appellant agreed not to charge a commission for putting the horses through the ring if he purchased them from Sherwin, regardless of the price paid. His testimony was that he bought the horses to go through the ring and that appellant agreed to put them through the ring for him, saying, "Of course it don't matter to me who I sell for, whether I sell for you or Mr. Sherwin. If I sell them for Sherwin there is $2 commission of which I get half; if I sell them for you it is the same. If you can buy the horses from Sherwin go and do that, and I will sell them, the commission is just the same."

The testimony of appellee upon this subject was corroborated by W. F. McTaggart, who claims to have been present at the conversation between appellant and appellee. Appellant denied the claim of appellee and testified that he agreed to put the horses through the ring for appellee if he purchased them at $25 a head, but that he never proposed to do so if Slater purchased them at $22.50 a head.

Appellant introduced no witness to corroborate his statement concerning the condition under which he was to put the horses through the ring.

Upon the question of the terms upon which appellee took the check for $165, given him by appellant,

there was also a controversy. Appellee testified that he took the check in part payment of what was due him and that he agreed with appellant to leave the question of whether he should pay appellant a commission of $2 a head for putting the horses through the ring, to Mr. Searcy, the agent of the Sales Stables Co., who sold the horses in the ring. This statement of appellee was also corroborated by the witness McTaggart.

Appellee further testified that when he came back to see appellant two weeks later, appellant had not submitted the matter to Mr. Searcy as agreed upon and said he would not do so, as he would not pay appellee the $60. Appellant on the contrary swore that while appellee found a little fault with the statement and thought he ought not to pay the commission, he finally took the check in full settlement of the transaction.

Upon this question appellant was corroborated to some extent by his bookkeeper, August Weimken. It will be seen that the above questions, which were the only questions of fact involved in the case, were sharply controverted.

Complaint is made by appellant that the court erred in an instruction given for appellee, bearing upon the question of the legal effect of the acceptance of the check in question by appellee. The instruction was not carefully drawn but could not have been prejudicial to appellant under the evidence in this case, especially as appellant himself offered and the court gave for him, an instruction containing substantially the same theory as to the law governing that phase of the case. Martensen v. Arnold, 78 Ill. App. 336.

Upon the whole record we are of opinion there was evidence sufficient to sustain the verdict of the jury and that there was no reversible error committed in the trial of the cause.

The judgment of the court below will therefore be affirmed.

*Affirmed.*